UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at FRANKFORT

CASE NO. 3:07-CV-63-KKC

UNITED STATES OF AMERICA,                                          PLAINTIFF

v.                                    **OPINION & ORDER**

MARVIN JACKSON,                                                    DEFENDANT

* * * * * * * *

This matter is before the Court on the Motion of the Defendant, Marvin Jackson, entitled, "Acceptance for Value, Request for Clarification of 'Order' in the Matter of Case #3:07-CV-63-KKC" [R. 9], and the Motion of the Plaintiff, the United States of America, for Judgment on the Pleadings or, Alternatively, for Default Judgment [R. 12]. The Court will jointly address both Motions within the following Opinion and Order. For the reasons given below, the Plaintiff's Motion is GRANTED.

I.      **Background**

In 2006, the Internal Revenue Service [hereinafter "IRS"] issued two wage levies against Defendant Jackson for tax assessments for the years 2001 and 2002. Revenue officer James Ciafli was assigned to Defendant's case after the second of these wage levies was issued. On March 21, 2007, the IRS then filed a notice of federal tax lien for civil penalties that Defendant incurred in 2002 and 2003. On March 23, March 24, March 29, and June 8, 2007, Defendant filed Uniform Commercial Code [hereinafter "UCC"] forms with the Kentucky Secretary of State's Office which purported to assign "debts" from the IRS and Ciafli to Defendant. These alleged "assignments" were for $16,000,007.05, $30,442.58, $2,500.00, and $3,059.95.

In response to these UCC filings, the Plaintiff brought a Complaint in this Court seeking a declaratory judgment against Defendant.  The Plaintiff argued that the UCC forms "were filed without any legal basis whatsoever and are wholly without merit," and that the forms "fraudulently identify the Service and Ciafli as 'debtors' and are retaliatory attempts to interfere, molest, interrupt, hinder, and/or impede federal tax administration."  Complaint, at 2.  The relief sought was that this Court declare the UCC forms to be null, void, and of no legal effect; that the Plaintiff be permitted to file any order or judgment with the Kentucky Secretary of State and other public records offices; that the Plaintiff be awarded its costs and attorneys' fees; and that any other just and proper relief be awarded.  *Id.* at 3.

Following this, the Defendant filed a series of pleadings that, when viewed even in the best possible and most lenient light, can only be described as hopelessly confusing and inarticulate.  However, for purposes of completing the record, the Court will recount the tortured history of this case.  First, on November 20, 2007, Defendant filed what was titled "Response to Complaint," and subtitled "Writ of Certiorari," "Writ in the Nature of Discovery," and "Request for Debt Validation Assessment."  Response to Complaint, at 1.  In this "Response to Complaint," Defendant purports to "request a validation of debt regarding the above styled case with attached presentments from Agent: ANNE E. BLAESS 'et al.'" *Id.*  Defendant claims to be a "secured party," though what, if anything, Defendant claims a security interest in is never stated.  *Id.*

Attached to this "Response to Complaint" were several documents prepared by Defendant, as well as copies of the summons and complaint in this action.  Attachments to Response to Complaint, at 1-11.  One of these documents is styled a "Notice of Acceptance" and

2

"Notice of Intent (Under Contract Law)," and it states that it is "to discharge all debt in this matter, for and on behalf of the MARVIN JACKSON trust fund debtor) . . . ." *Id.* at 1. Defendant then attaches two documents entitled "Negotiable Charge-Back," stating that Defendant "accept[s] for value all related endorsements, both front and back, in accordance with U.C.C. 3-419 and H.J.R. 192," *id.* at 2, and requests a charge of his "UCC Contract Trust Account No. 3:07-CV-63-KKC." *Id.* This latter "account number" is actually the present case's court docket number. Defendant also attaches a "Truth Affidavit in the Nature of Supplemental Rules for Administrative and Maritime Claims Rules C(6)," in which he apparently presumes to deny the existence of himself, the United States, the I.R.S., and other parties relevant to this action. *Id.* at 8. Nowhere in the "Response to Complaint," however, does Defendant deny any of the statements and allegations made in the Complaint. Nor does Defendant ever appear to raise any counter-arguments or affirmative defenses to the Complaint's allegations.

Defendant followed up this alleged "Response to Complaint" with two filings, on November 29, 2007, and December 14, 2007, respectively. Both submissions are entitled "Writ of Certiorari," "Writ in the Nature of Discovery," and "Request for Debt Validation Assessment," much as the "Response to Complaint" was. The purpose and effect of these particular filings is just as mysterious as that of the "Response." In the November 29 filing, Defendant again states his "Notice of Acceptance/Notice of Intent (Under Contract Law)." November 29, 2007 Filing, at 2. Furthermore, Defendant also attached a letter entitled "Negotiable Charge-Back" which appears to assert that he is "exempt from levy," copies of the Summons and Complaint marked "Accepted for Value," an unsigned "Bonded International Bill of Exchange Order" seemingly purporting to "Credit the Account of the United States District

3

Court" by $16,036,009.58.  *Id.* at 3-12.  The latter document is stamped "VOID" at the bottom.

*Id.* at 12.  Defendant also encloses a "Jurat," "Affidavit for Verification of the Facts," and

"Verification" asserting that the statements of facts and law contained in the rest of the filing are

correct.  *Id.*

Similarly, in the December 14 filing, Defendant includes a so-called "Conditional Notice

of Acceptance,"a "Demand for Set-Off" claiming that Defendant is exempt from levy, an

additional copy of the "Bonded International Bill of Exchange Order" from the November 29

filing, a supposed promissory note for the amount of $16,036,900.58, a "Preauthorized Notice of

Transfer," and a "Statement of Account" listing the case's docket number as the account number.

December 14, 2007 Filing, at 1-6.  Defendant follows these with a federal income tax form, a

copy of a financing statement filed with the Kentucky Secretary of State's Office, alleged

releases of personal and real property, and the "Verifications" from the November 29 filing.  *Id.*

at 7-12.

The Court chose to interpret these above two filings as Motions to the Court, and on

January 7, 2008, the Court entered an Order denying both of them.  The Court found them to be

"wholly devoid of legal merit," and concluded that "Defendant Jackson submitted these matters

for the purpose of inappropriately impeding a federal taxation proceeding."  Order of January 7,

2008.  The Court further warned Defendant "against utilizing any further legally groundless

tactics, at the risk of incurring the Court's power of contempt."  *Id.*

Dissatisfied with this Order, Defendant filed several other pleadings on January 22, 2008.

The first was entitled, "Acceptance for Value, Request for Clarification of 'Order' in the Matter

of Case # 3:07-CV-63-KKC."  Defendant again claims that he is both a creditor and a secured

4

party, and then purports to challenge the Court's January 7 Order on several novel grounds. Defendant first claims that there was no response to his "Truth Affidavit in the Nature of Supplemental Rules for Administrative and Maritime Claims Rules C(6)," and that therefore, "the Plaintiffs have no standing to pursue this issue," and that "a default judgment on the merits is warranted." Motion for Clarification, at 1-2. Next, Defendant argues that it is unclear to which filings the January 7 Order is referring. *Id.* at 2-3. Defendant finally argues that his "request for debt validation assessment" were proper filings under commercial law, and that the Plaintiffs "were and are REQUIRED by Statute to provide the Secured Party with a true and correct copy of the underlying assessment certificate or certificates." *Id.* at 3.

Within this same pleading, Defendant also submitted eleven "Questions for Clarification" to the Court. The questions challenge the authority of the Court to enter its January 7, 2008 Order, based on Defendant's unique theory that the Plaintiffs "have defaulted via an non-rebuttal to my affidavit,"and that, therefore, "they are artificial, fictions, and do not exist and therefore do not have standing to bring such an action against said Live Flesh and Blood Man, Marvin Jackson." Motion for Clarification, at 4. Defendant accuses the Court of "giving the appearance of impartiality, unfairness and oversight of proper evidence to benefit the Petitioner" by "ignoring" Defendant's various "affidavits." *Id.* Defendant also raises various questions about the legal effect of the Court's January 7, 2008 Order and as to what pleadings the Order is referring. *Id.* at 4-5. Finally, Defendant also filed a "Notice of Default on Truth Affidavit in the Nature of Supplemental Rules for Administrative and Maritime Claims Rules C(6)," in which he claims that the Plaintiffs' failure to respond or rebut this affidavit constitutes grounds for default and for a judgment on the merits. Notice of Default, at 1-2.

On January 29, 2008, the Plaintiff filed a Motion for Judgment on the Pleadings, or in the Alternative, Default Judgment.  Plaintiff claims that Defendant's "Response to Complaint" does not conform to the requirements of the Federal Rules of Civil Procedure for answers to complaints, does not state any valid defenses, and does not deny any of the Plaintiff's claims. Plaintiff argues that this entitles it to judgment on the pleadings.  Alternatively, if the Court determines that Defendant's "Response to Complaint" does not constitute an answer at all, then Plaintiff argues that they are entitled to a default judgment for failure to answer the Complaint.

## II.      Analysis

### A.      Motion for Judgment on the Pleadings

The Court first wishes to address the Plaintiff's Motion for Judgment on the Pleadings, or in the alternative, Default Judgment.  Defendant was required to file an answer to the Plaintiff's Complaint within a twenty-day period of time, upon penalty of the Plaintiff being granted a default judgment.  FED. R. CIV. PRO. 12(a)(1)(A), 55(a).  Since *pro se* litigants are held to "less stringent standards than formal pleadings being drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and considering the fact that the aforementioned pleading was titled "Response to Complaint" and filed at the exact deadline of the allowed twenty-day time period for filing an answer, the Court chooses to treat this "Response to Complaint" as Defendant's answer to the Plaintiff's Complaint.  A default judgment against Defendant is therefore unwarranted.

However, even though a default judgment would be inappropriate, Plaintiff is quite clearly entitled to a judgment on the pleadings.  Under the Federal Rules of Civil Procedure, a defendant must "state in short and plain terms the party's defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies."  FED. R. CIV. PRO. 8(b).

6

Moreover, "[a]verments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading." *Id.* at 8(d). The Plaintiff correctly points out that Defendant has never actually denied any of the claims in the Complaint. Defendant's "Response to Complaint" never denies that he filed UCC forms purporting to assign "debts" from the IRS and James Ciafli, he never denies that the forms are without legal basis or merit, and he never denies that he filed the forms to interfere, molest, interrupt, and/or impede federal tax administration. *See* Complaint, ¶¶ 5-8. Even while viewing every statement in Defendant's "Response to Complaint" in the most lenient and favorable light possible, nothing in this pleading can even be remotely construed as a denial of any of the claims brought against Defendant.[1] Although the Court is instructed to interpret *pro se* defendants' pleadings less stringently than those drafted by attorneys, "the less stringent standards for *pro se* litigants does not allow them to simply disregard the applicable Local and Federal Rules of Civil Procedure or render the court the decision-maker of 'what claims a [litigant] may or may not want to assert.'" *United States v. Funds from Prudential Securities*, 362 F. Supp. 2d 75, 82 (D.D.C. 2005) (citation omitted). By failing to deny the Plaintiff's claims in his "Response to Complaint," Defendant is deemed to have admitted to them. *See* FED. R. CIV. PRO. 8(d). Plaintiff is therefore entitled to judgment on the pleadings.

The Court also wishes to address at this time an issue that Defendant repeatedly raises in his "Response to Complaint," his additional pleadings, and his Motion for Clarification. In his

---

[1] Even if statements from Defendant's other pleadings could be very loosely interpreted as denials of the Plaintiffs' claims, a contention that the Court does not accept, these additional pleadings were filed well past the twenty-day deadline for filing an answer to the Complaint. Therefore, they cannot provide the denials that Defendant's "answer," such as it is, lacks.

"Response to Complaint," Defendant submits a "Truth Affidavit in the Nature of Supplemental Rules for Administrative and Maritime Claims Rules C(6) with Specific Negative Averment and Denial Corporations Existence."  Response to Complaint, at 8.  Citing Federal Rule of Civil Procedure 9(a), Defendant uses this "Truth Affidavit" to state that he "specifically negatively avers and denies the existence of each of the following persons and named corporations."  *Id.* Among the parties that Defendant denies the existence of include the United States, the State of New York, Monroe County, the IRS, two United States Attorneys, and several others.

Federal Rule of Civil Procedure 9(a) states that "[w]hen a party desires to raise an issue as to the legal existence of any party . . . the party desiring to raise the issue shall do so by specific negative averments . . . ."  FED. R. CIV. PRO. 9(a).  Defendant appears to be bringing such claims with respect to the named parties above.  Even assuming that this in fact is Defendant's strategy, and even if the Court were to accept these particular specific negative averments as legitimate defenses to the Complaint, Defendant still has effectively admitted the Plaintiff's claims by failing to deny them in his Response.  Denying the existence of the United States and anyone or anything else does not allow Defendant to avoid judgment on the pleadings.

However, this is perhaps besides the point, as the Court surely does not accept these particular specific negative averments, which deny the existence of the aforementioned parties, as legitimate legal defenses.  The Court hereby takes judicial notice that the United States, the IRS, and all other named parties in Defendant's specific negative averments do, in fact, exist.[2]

---

[2] Defendant also names himself, Marvin Jackson, as one of the parties that he "specifically negatively avers and denies the existence of."  *See* Response to Complaint, at 8.  Though the Court takes judicial notice of the existence of Defendant, even this finding is perhaps unnecessary, on a theoretical level, due to the existential nature of this particular specific negative averment.  *See* RENÉ DESCARTES, PRINCIPLES OF PHILOSOPHY pt. I, § 7 (Amsterdam, Elzevirs 1644) ("I think, therefore I am.").

Defendant's specific negative averments of non-existence of numerous parties do nothing to preclude the Plaintiffs' entitlement to judgment on the pleadings. The Court has labored exhaustively to find any possible legal merit in Defendant's "Response to Complaint" and in his other pleadings, considering that Defendant is proceeding *pro se*, but the Court's patience and interpretive skill can only go so far. Defendant's failure to abide by the Federal Rules of Civil Procedure and his decision to instead bombard the Court with numerous incoherent and frivolous pleadings make the outcome of this case very clear. Plaintiffs' Motion for Judgment on the Pleadings is granted.

**B.     Motion for Clarification**

The Court will now briefly address the various questions Defendant has raised in his Motion for Clarification, to the extent the Court can reasonably interpret the meaning of these questions:

**Q1:** Defendant claims that Plaintiffs have "defaulted via an non-rebuttal to my affidavit," and because of this, they "*admitted* to all parties that they are artificial, fictions, and do not exist and therefore do not have standing to bring an action against" Defendant. Motion for Clarification, at 4. Defendant asserts that there is no legal basis for the Court's January 7, 2008 Order outside of dismissal. *Id.* As discussed above, the Court takes judicial notice of the existence of the parties to this action. There is clearly a "legal jurisdictional basis" for the Court's January 7, 2008 Order.

**Q2:** Plaintiff asks why "no copy of a response or counterclaim to the Affidavit of Marvin Jackson ever received by him regarding filed by the Plaintiff that gives rise to the "Order" when no competent standing of the Plaintiff has been established?" *Id.* Again, the Court takes judicial

notice of the parties' existence.  Therefore, no response to Defendant's "Affidavit" is required, and competent standing has been established.

**Q3:** Defendant asks whether the Court is ignoring his various "affidavits," calls them a "fatal defect," and accuses the Court of giving "the appearance of impartiality, unfairness and oversight of proper evidence to benefit the Petitioner."  *Id.*  It is certainly not "impartiality" or "unfairness" for the Court to determine that Defendant's pleadings and arguments are frivolous and merit giving orders in favor of the Plaintiffs.

**Q4:** Defendant questions which pleadings or documents the Court was referring to in its January 7, 2008 Order when it used the terminology "[R.5 and 6]."  *Id.*  This is a reference to docket records five and six, Defendant's November 29, 2007 "Second Request for Debt Validation Assessment" and December 14, 2007 "Motion for Writ of Certiorari."

**Q5:** Defendant asks whether "the 'Order' stating that the Secured Party is 'devoid' of the right to make a *Request for Debt Validation Assessment*' to the IRS (Cialfi), and that to do so is 'wholly devoid of legal merit' in contravention of 26 USC 6203 and/or 15USC Chapter 41 subch 5 Sec. 1692?"  *Id.*  Defendant is missing the point.  The Court's Order of January 7, 2008 is stating, and the Court is today restating, that Defendant's numerous pleadings have failed to satisfy his burden to sufficiently answer the Plaintiff's Complaint.  By failing to sufficiently answer the Complaint, Defendant is deemed to admit the allegations contained therein.  Defendant's protestations regarding his "Request for Debt Validation Assessment" are therefore irrelevant to this matter, and need not be further addressed by the Court.

**Q6:** Defendant asks whether "the 'Order' [is] stating that the Plaintiff (IRS/CIALFI) does not have to provide a copy of the record of the assessment of a claimed debt to the Secured Party

10

pursuant to his Request for Debt Validation Assessment?"  *Id.*  The Court's answer to "**Q5**"

above addresses this question equally well.

     **Q7:** Defendant asks whether "the Court's 'ORDER' [is] declaring that **<u>recording</u>** the

release of an ACCEPTED Bond (funds) or tender of a payment to an assignee/claimant, the

IRS/Treasury, in a UCC registry unlawful or being declared a 'legally groundless tactic'. . .

'submitted . . . for the purpose of inappropriately impeding a federal taxation proceeding'?"  *Id.*

Defendant continues to misunderstand the point of the matter at hand.  The Court's Order of

January 7, 2008 is stating, and the Court is today restating, that Defendant's numerous pleadings

have failed to satisfy his burden to sufficiently answer the Plaintiff's Complaint.  By failing to

sufficiently answer the Complaint, Defendant is deemed to admit the allegations contained

therein.  Defendant's protestations regarding the supposed "Acceptance" of the "tender of

payment" are therefore irrelevant to this matter, and need not be further addressed by the Court.

     **Q8:** Defendant asks, "[s]ince the assigning of an 'accepted' tender of payment is the

commercial activity recorded on the UCC, is the 'Order' a ruling on the validity of the legality of

that tender nine months after it's Acceptance in contravention of 26 US 6325(a), UCC 3-

603(a)(b) and even though not requested as relief in the plaintiff's Complaint?"  *Id.*  The Court's

answer to "**Q7**" above addresses this question equally well.

     **Q9:** Defendant asks, "What UCC Form and information is being referred to as '*wholly*

*devoid of legal merit*'?"  The Court is not referring to Defendant's UCC forms, it is referring to

Defendant's November 29, 2007 and December 14, 2007 pleadings.

     **Q10:** Defendant asks if "the Court's 'ORDER' assuming that a 'Request for Debt

Validation Assessment' or a 'Writ of Certiorari was recorded in Jackson's UCC filing?"  *Id.* at 5.

The Court's January 7, 2008 Order refers to Defendant's November 29, 2007 and December 14, 2007 pleadings.

**Q11:** Defendant asks whether the Court's January 7, 2008 Order is referring to the "Second Request for Debt Validation Assessment" filed on November 29, 2007. *Id.* It is.

Defendant concludes his Motion by stating that he "would not like to think that the Secured Party's Right to Contract and Commerce is being infringed upon unjustly," and again accuses the Court of being impartial, unfair, and states that it "has engaged in obfuscation or ignoring of the true facts in evidence." *Id.* Needless to say by now, Defendant has established absolutely nothing in the way of "true facts in evidence" that the Court could possibly "obfuscate or ignore." The Defendant's Motion to Clarify is addressed as stated above, and the Plaintiff's Motion for Judgment on the Pleadings is **GRANTED.**

Dated this 14th day of February, 2008.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**

12